ing that the work is to be done and knowing that it is being done, does not try to stop what he has no power to prevent. Havens v. Power Co. (Sup.) 17 N. Y. Supp. 580, affirmed 20 N. Y. Supp. 764; Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292; McCauley v. Hatfield (Sup.) 28 N. Y. Supp. 648.

In case an owner of premises has such control over them that he may permit or prevent their improvement by the person in possession, and stands by and allows them to be improved, a different question is presented, and the cases arising out of such a state of facts are not germane to the question involved in the case at bar. It is clear that the plaintiff's assignor never acquired a legal lien on the interest of the appellant in the land, and the judgment against Bridget Slater should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; ADAMS, J., in result.

---

(25 App. Div. 383.)

### COOPER v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    February 6, 1898.)

1. INJURY TO RAILROAD EMPLOYE—NEGLIGENCE.

An experienced conductor caused his train to back on a side track, pushing along some empty cars not connected with his train. He did not put brakes on these cars, as he knew he was required to do by the rules. When he returned to the main track, said cars followed, rolling down a grade that was so slight as to be imperceptible to the eye. Another train collided with the cars, and the fireman was killed. *Held*, that the railroad company was not negligent in allowing said conductor to act on the division where the accident occurred, though he was unfamiliar with the road, and did not know that the side track had a down grade.

2. SAME—EXCESSIVE DAMAGES.

Plaintiff's intestate was 34 years old, and in good health. He left a wife, son, and daughter, of the ages 32, 10, and 8 years, respectively. Defendant had employed him as fireman for three years, paying $1.75 per day the first year, $1.85 the second, and $2 the third. *Held*, that a verdict of $15,000 for negligently causing his death was excessive.

Appeal from trial term.

Action by Emma Cooper, as administratrix of the estate of Judson M. Cooper, deceased, against the New York, Ontario & Western Railway Company. From a judgment for plaintiff for $15,000, and an order overruling a motion for new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Lewis E. Carr, for appellant.
L. W. Baker, for respondent.

FOLLETT, J.    This action was begun February 29, 1896, to recover damages occasioned by the death of the plaintiff's intestate, her husband, caused, it is alleged, by the negligence of the defendant. The accident which caused the death arose out of the following facts:

The Chicago Limited, No. 5, a passenger train from New York City, running north, was due at Bernard's Bay at 1:15 a. m. August 18, 1895. Trains Nos. 5 and 30 were due to meet and pass at 12:53 a. m. at

49 N.Y.S.—31

Sylvan, a station a few miles east of Bernard's Bay; but, No. 30 being late, its conductor was directed to place his train on the side track at Bernard's Bay, and wait until No. 5 had passed, which he did. Standing on this side track were 15 or 20 empty coal and freight cars, in two groups, left there on the morning of August 17th.    Conductor Covey ran his train No. 30 down the main track to the east end of the siding, and backed it west onto the siding, and, in doing so, backed against the empty cars standing thereon, and moved them a short distace to the west, so as to make room for his train, No. 30, on the siding.

Rule 311 reads as follows:

"311. They [freight conductors] must be sure that no cars have become detached from their trains on the main track.    When cars are left on a siding, they must see that the brakes are put on tightly, to prevent them from being moved."

Plaintiff's witness, Covey, testified:

"I suppose it was a part of my duty to put brakes on these [cars which he had moved].    As I was unacquainted with the grades of the road, I should have used that precaution."

And the undisputed evidence is that for a long time prior to August 18, 1895, the practice had been that, when cars standing on a side track were moved by a train entering thereon, the conductor was required to see that the brakes were set on the cars which were moved, before they were left.    On the occasion in question, Conductor Covey did not set or cause to be set the brakes on the cars which he had moved; and the result was that, after his train left the side track and passed east on the main track, two empty gondola cars rolled eastward on the side track, down to the main track.

August 18, 1895, Judson M. Cooper, plaintiff's intestate, was employed as fireman on freight train No. 29, which met and passed No. 30 at Cleveland, the next station about three miles east of Bernard's Bay; and, when No. 29 reached Bernard's Bay, it collided with the two gondola cars which had escaped onto the main track, killing the plaintiff's intestate.

The plaintiff, on the trial, sought to recover on the grounds (1) that defendant was negligent in not having a "derailing switch" at the east end of the side track; (2) that defendant was negligent in not promulgating and enforcing necessary rules for the management of its business and the safety of its trains; (3) that defendant was negligent in allowing Albert E. Covey to act as conductor on trains Nos. 30 and 31.

The learned trial judge ruled correctly that the evidence was insufficient to authorize the submission of the first and second groups, upon which a recovery was sought, to the jury; and the case was sent to the jury upon the theory that the evidence was sufficient to authorize a finding that the defendant was negligent in permitting Albert E. Covey to act as conductor of the train.    There is no dispute about any material fact in the case, and from the evidence it is clear, I think, that the accident was caused solely by the neglect of Albert E. Covey and the employés of train No. 30 to set the brakes on the cars standing on the side track, which they moved.    This negligence

was that of co-employés with the plaintiff's intestate, and for their negligence the defendant was not liable to the plaintiff's intestate, as was correctly held by the learned trial judge.

The issue upon which the plaintiff's right to recover depended was whether William C. Hartigan, defendant's superintendent of the Northern Division of its railroad, was negligent in employing Albert E. Covey to act as conductor on that division. Covey was called as a witness by the plaintiff, and he testified that he entered the service of the defendant in 1887, and continued therein until August 18, 1895, the date of the accident, for a period of eight years. During the first two years he was a car repairer; during the next two years a brakeman on the Northern Division; and for about four years was a conductor of freight trains running between Mayfield, Pa. (which is three miles south of Carbondale), and Norwich. The defendant's superintendent gave substantially the same account of Covey's services, and also testified that his record was good. It is not asserted that during his long service he had been guilty of negligence or of misconduct, and it is conceded that he possessed sufficient intelligence and was competent to discharge the duties of a conductor of freight trains. The sole ground upon which it was sought to have the jury find that he was incompetent to conduct this particular train was that he had insufficient knowledge of the road between Norwich and Oswego to justify his employment thereon. In August, 1895, Covey applied to the superintendent of the Northern Division for a freight train on that division, and was directed to go over it on a freight train, and familiarize himself with the service. August 13, 1895, he left Norwich for Oswego on a freight train, went to Oswego, and returned to Norwich August 14, 1895; and on the 17th he was directed by the superintendent to take freight train No. 31 to Oswego, and return therefrom to Norwich with train No. 30.

It was asserted on the trial, and is now asserted, as a ground for sustaining this verdict, that the proximate cause of the accident was the want of knowledge of Covey of the fact that this side track was not level, but sloped from the west towards the east, so that cars on which brakes were not set might roll down to the east end of the side track. The plaintiff called an engineer who testified that this side track is 1,724 feet long, and that the east end thereof is 4 feet lower than the west end thereof, that is, that there is a descending grade from the west end to the east end of 4 feet in 1,724 feet. This grade is so slight that it would not be observed by ordinary observers, and, indeed, the evidence is that, when standing at the west end of the side track, it apparently descends towards the west instead of towards the east. Besides, it is a matter of common knowledge that, when standing on a railroad track with a slight grade, it is impossible to tell in which direction the track descends. It is not asserted that Albert E. Covey made any error in running trains 30 and 31, except his failure to see that the brakes were applied to the cars which he moved before leaving them. I am unable to see any connection between his neglect to set the brakes on those cars and the fact that he had never before run a freight train over the Northern Division. For four years before the accident he had been a freight

484          49 NEW YORK SUPPLEMENT          (Sup. Ct.
and 83 New York State Reporter.

conductor, familiar with rule 311, and familiar with the practice of
the defendant's employés that, when cars were moved on side tracks,
the brakes must be set before they were left.    He so testified.    The
cause of the accident was his omission to set the brakes on the cars
which he moved, in obedience to the rule and the practice long en-
forced by the defendant.    This rule and practice related to all side
tracks on the whole road, whether they were level or on grades.    It
appears by undisputed evidence that trains Nos. 30 and 31 were well
manned by Albert Connors, engineer, Baulif, fireman, Henry Jones,
head brakeman, J. M. Wheeler, middle brakeman, and Albert Haight,
flagman.    This crew, with the exception of Albert E. Covey, con-
ductor, had long been engaged in running freight trains over the North-
ern Division, and Connors, Jones, and Haight testified that they were
familiar with the division, its stations, and its side tracks.    Haight
was so familiar with the division and efficient that he had been em-
ployed as an extra freight conductor on the division.

At the close of the plaintiff's case, the defendant moved that the
complaint be dismissed, which was denied, and the defendant excepted,
which motion was renewed at the close of the evidence, and again de-
nied, and the defendant excepted.    The denial of this motion was
error, for which, without considering the exceptions to the charge, the
judgment should be reversed.

The intestate was 34 years of age, and in good health.    He left a
wife, 32 years of age, a son, 10 years of age, and a daughter, 8 years
of age.    He had been employed by the defendant as a fireman for a
little over 3 years, receiving during the first year $1.75 per day, during
the second year $1.85 per day, and during the third year $2 per day.
Before becoming a fireman, he worked in defendant's roundhouse as
a wiper, receiving $1 per day.    The verdict was excessive, and vastly
more than a just compensation for the pecuniary injuries, resulting
from the decedent's death, to the person or persons, for whose benefit
the action is brought.    The judgment and order should be reversed,
and a new trial granted, with costs to the appellant to abide the
event.    All concur.