### GILPIN v. RUPPERT.

(Supreme Court, Appellate Division, First Department. December 3, 1915.)

1. MASTER AND SERVANT ⚎287—INJURIES TO SERVANT—NEGLIGENCE OF FELLOW SERVANTS—EVIDENCE—QUESTION FOR JURY.

Evidence in an action by the widow of a deceased servant for his wrongful death *held* sufficient to go to the jury on the question of the negligence of a fellow servant who had the authority to control deceased.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. ⚎287.]

2. MASTER AND SERVANT ⚎182—INJURIES TO SERVANT—ACTS OF FELLOW SERVANTS—AUTHORITY TO CONTROL—LIABILITY OF MASTER.

The deceased servant was employed to wash auto trucks by the defendant. Another servant was employed to drive the truck in and out

---

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the building where the washing was done. It was customary for him to order the deceased to open the door for him. There was no evidence of express authority given the driver to command the deceased, but it was merely his custom to do so. *Held*, that the employer was liable for deceased's death, under Labor Law (Consol. Laws, c. 31) § 200, subd. 2, as amended by Laws 1910, c. 352, § 1, providing that a master shall be liable for injuries to an employé by reason of the negligence of any person in the service of the employer intrusted with any superintendence, or by reason of the negligence of any person intrusted with authority to direct, control, or command any employé in the performance of the duty of such employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. ☞182.]

Appeal from Trial Term, New York County.

Action by Helen Gilpin, as administratrix of Richard Gilpin, deceased, against Jacob Ruppert. From an order dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

See, also, 155 N. Y. Supp. 1109.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and SMITH, JJ.

John C. Robinson, of New York City, for appellant.
Joseph F. Murray, of New York City, for respondent.

DOWLING, J. [1] Deceased was in the employ of the defendant corporation at its brewery, his duties consisting in washing automobile trucks in a room on the north side of Ninetieth street between Second and Third avenues, in the city of New York. When filled, this room contained nine trucks, each 20 feet long by 6 feet wide, and being either bottle wagons (the sides of which were entirely covered with curtains, and having curtains on both rear doors, so that the chauffeur could not see through the back of the wagon from his seat in front) or keg trucks (on which there was no top or covering). The cars were placed closely together, there only being about 1½ feet between them when assembled in this room. Adjoining the street, as a means of ingress and egress, were two sliding doors of equal width, which met in the center of the driveway and were fastened by a hasp. One Tobin, known as an "operator," was the only one in defendant's employ performing that duty, and as cars were continually entering and leaving the room, being brought there for washing and for small repairs, Tobin was in charge of them and their movements, and it was customary for him, when he wished to take a truck out of the room, to give the order, "Open up, boys," or "Let me out," whereupon whichever of the washers (Moore or deceased) was nearer to the door would open it, sometimes both doing it together. These two men opened the doors whenever he ordered them to do so, which happened whenever Tobin wished to take a car out, or shift the position of a car, or have one washed, or take one around to the mechanics' shop. Tobin, as operator, was the shifter of every car that came in this room, and would allot them their places on the floor. He did no driving outside of the yard. No one except Tobin ever took a car out of this room. No one else was allowed to do so. The witness Moore said that, after receiv-

ing the orders to open up, he would say to the operator of the car, "All right; come ahead," which was never done until the doors were fully opened, and he had seen the deceased act in the same way. After this announcement was made, Tobin would back the truck out of the room through the open doors.

On December 11, 1913, at about 7:50 p. m., Tobin entered the garage and shouted out, "Will you open up, boys," or "Open up," and Moore paid no further attention for the moment to what was going on; he being engaged in washing a car and keeping the current of water turned on. At this time the deceased was the nearer of the two washers to the door, and for that reason he was the one who undertook to open it, as was the custom. Moore heard the motor start, and in about a second heard Tobin call, "Frank, did I hit anybody?" (addressing the witness Moore) and Moore replied that he did not know, but upon investigating found the easterly half of the sliding door opened and the westerly part half opened, with the deceased crushed between the truck and a clothes locker adjoining the westerly section of the door. The truck was one of the bottle trucks heretofore described, numbered 233, and as Tobin was backing it out it was impossible for him to see through the covered rear portion thereof to ascertain whether the doors were opened or not. There is no testimony that the deceased had given the customary signal of "All right; come ahead," or any other signal that the doors were open. It is conceded that the deceased died as the result of the injuries then sustained. Upon this state of the testimony, at the close of the plaintiff's case, we think it was error to dismiss the complaint.

[2] The testimony justified the conclusion that Tobin, whose negligence upon the record presented was for the jury, was intrusted with authority to direct, control, or command the employés who were engaged in the performance of their duties as washers for the defendant. This being so, the case falls within subdivision 2, section 200, of the Labor Law, as amended by chapter 352 of the Laws of 1910. See Cashmore v. Peerless Motor Car Co., 154 App. Div. 814, 139 N. Y. Supp. 359; Famborille v. Atlantic Gulf Co., 155 App. Div. 833, 140 N. Y. Supp. 529, affirmed 213 N. Y. 666, 107 N. E. 1077; Pelow v. Oswego Const. Co., 162 App. Div. 840, 147 N. Y. Supp. 750.

The judgment appealed from will therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.